## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**THE COMFY COTTAGE, INC.,**
**COMFY COTTAGE, a Florida not-**
**for-profit corporation,**

      **Plaintiff,**

v.                                                  **Case No: 8:24-cv-991-MSS-TGW**

**PASCO COUNTY, a political**
**subdivision of the State of Florida,**

      **Defendant.**

_____

## <u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Summary Judgment, (Dkt. 21), Defendant's response, (Dkt. 27), and Plaintiff's reply. (Dkt. 28) Also before the Court is Defendant's Motion for Summary Judgment, (Dkt. 31), Plaintiff's response, (Dkt. 36), Defendant's reply, (Dkt. 38), and two joint stipulations of agreed material facts. (Dkts. 26, 37) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court orders that Plaintiff's Motion for Summary Judgment, (Dkt. 21), is **DENIED** and Defendant's Motion for Summary Judgment, (Dkt. 31), is **GRANTED**.

## I.    BACKGROUND

### a.  Procedural Background

On April 24, 2024, The Cottage, Inc. Comfy Cottage ("Comfy Cottage") filed this action against Defendant Pasco County ("Defendant" or "Pasco County"). (Dkt. 1) In the Complaint, Comfy Cottage alleges Defendant violated the Fair Housing Act and Amendments, 42 U.S.C. § 3601 *et seq.* (the "FHA") (Count I), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") (Count II). (Id.) Comfy Cottage alleges Defendant discriminates against disabled individuals by requiring residential group homes for people with intellectual or developmental disabilities to install automatic fire sprinkler systems. Comfy Cottage alleges Defendant's sprinkler system requirement facially discriminates based on disability. (Id. at ¶¶ 30, 34) Comfy Cottage asserts that this alleged facial discrimination is evidence of Defendant's disparate treatment of disabled individuals in violation of the FHA and the ADA. (Id.) Comfy Cottage also alleges Defendant's requirement has a disparate impact on disabled individuals. (Id.) Finally, Comfy Cottage alleges Defendant's refusal or failure to make a reasonable accommodation that would permit Comfy Cottage to operate a group home for disabled individuals without installing a sprinkler system violates the FHA and the ADA. (Id.)

Comfy Cottage moves for summary judgment on its claims of disparate treatment because Comfy Cottage asserts the sprinkler system requirement facially discriminates against disabled individuals in violation of the FHA and the ADA. (Dkt.

21 at 10) Comfy Cottage also moves for summary judgment on its claims that Defendant denied Comfy Cottage's residents a reasonable accommodation in violation of the FHA and the ADA. (Id. at 11–15)

Defendant moves for summary judgment on all of Comfy Cottage's claims. (Dkt. 31)

### b. Undisputed Material Facts

#### i. *Comfy Cottage's Application for Licensure as a Community Residential Group Home*

Comfy Cottage is a not-for-profit corporation that provides services to individuals in Pasco County with intellectual and physical disabilities. (Dkt. 37 at ¶ 1) On June 20, 2023, Comfy Cottage requested a license for the operation of a single-family home in Pasco County as a foster care facility with a live-in caregiver, which qualifies as a "community residential home" under § 419.001 of the Florida Statutes. (Id. at ¶ 2)

The home is located at 3009 Clover Blossom Circle, Land O Lakes, Florida 34637 (the "Home"), and its current certificate of occupancy is for a single-family residence. (Id. at ¶¶ 2, 16) The Home is in a residential neighborhood and is physically indistinguishable from the surrounding single-family homes. (Id. at ¶ 5) Comfy Cottage plans to use the Home to provide permanent housing for up to three residents at a time, and these residents could live at the Home for the duration of their lives. (Id.) Comfy Cottage intends that the residents would live much like a nuclear family would. (Id.)

3

Before a license is granted for a building to operate as a community residential group home, the building must undergo a fire inspection by a local fire official. (Id. at ¶ 30) Comfy Cottage's Home, therefore, had to be inspected by the Pasco County Fire Marshal before it could be licensed to operate as a community residential group home. (Id. at ¶¶ 3, 31; Dkt. 31-2 at ¶ 5) But the Fire Marshal does not have jurisdiction to inspect single-family or two-family residences. (Dkt. 31-2 at ¶ 4) Thus, the Fire Marshal instructed Comfy Cottage to apply for a change of use permit for the Home. (Id. at ¶ 6) The change of use permit would require a new certificate of occupancy and verify the Home's use as a community residential group home rather than as a single-family residence. (Dkt. 37 at ¶ 20)

Although Comfy Cottage applied for a change of use permit for the Home, Pasco County has not issued one because Comfy Cottage has not installed a fire sprinkler system as required under § 310.5.1 of the Florida Building Code, Building. (Dkt. 21-1 at ¶¶ 6, 11; Dkt. 37 at ¶¶ 10, 18, 21–23) On December 20, 2023, Comfy Cottage met with Pasco County personnel, including Pasco County Building Construction Services, Pasco County Fire and Rescue, and General Counsel for Pasco County, to discuss waiving the sprinkler system requirement. (Dkt. 37 at ¶ 21; Dkt. 21-1 at ¶ 12) Comfy Cottage communicated its position that a fire sprinkler system is not required for the Home. (Dkt. 37 at ¶ 21) Pasco County disagreed and denied Comfy Cottage's request for a waiver of the sprinkler system requirement. (Dkt. 21-1 at ¶ 13)

Danielle Atherton-Bonner, the founder and Executive Director of Comfy Cottage, attests that the cost of installing the required fire sprinkler system at the Home

exceeds $25,000.00. (Id. at ¶ 16) Justin Frum, the Fire Marshal for Pasco County, attests he is aware of 23 residences that installed the required sprinkler system over the last three years, and "the average cost of the system" was $18,414.00.[1] (Dkt. 31-2 at ¶ 12)

### ii. Pasco County's Enforcement of the Building Code

According to the directive of the Florida legislature, Pasco County enforces the provisions of the Florida Building Code for the use and occupancy of every building and structure in Pasco County. Pasco Cnty., Fla., Ordinances ch. 18, art. VI, § 114 (2025); § 553.72(3), Fla. Stat. (2025) ("It is the intent of the Legislature that the Florida Building Code be . . . enforced by authorized state and local government enforcement agencies."). Pasco County has also adopted the provisions of the Life Safety Code, the Fire Prevention Code, and the Florida Fire Prevention Code. Id. at ch. 46, art. I, § 1. Where the provisions of any of these codes conflict, Pasco County enforces the code with the most stringent requirements. Id.

Under § 419.001 of the Florida Statutes, a "community residential home" is

> a dwelling unit licensed to serve residents who are clients of . . . the Agency for Persons with Disabilities . . . which provides a living environment for 7 to 14 unrelated residents who operate as the functional equivalent of a family, including such supervision and care by supportive staff as may be necessary to meet the physical, emotional, and social needs of the residents.

---

[1] The language of Mr. Frum's affidavit does not specify whether this average cost includes the average cost of the system and its installation, or only the cost of the system. The Court understands Mr. Frum's affidavit to aver that the average cost of the system and its installation is $18,414.00. The Court accepts Comfy Cottage's claim for purposes of considering this motion.

§ 419.001(1)(a), Fla. Stat. (2025). A home of six or fewer residents that otherwise meets the definition of a community residential home is considered a single-family unit. Id. at § 419.001(2). It is also considered a noncommercial, residential use for the purpose of local laws and ordinances. Id. Such a home "shall be allowed in single-family or multifamily zoning without approval by the local government," subject to conditions on its proximity to existing community residential homes. Id.

Although a separate building code exists for residential buildings, the Florida Building Code, Building (the "Building Code") nonetheless governs some buildings zoned for residential uses.[2] The Building Code's "Residential" occupancy classification and use designation includes "the use of a building or structure, or a portion thereof, for sleeping purposes . . . when not regulated by the [Residential Code]." § 310.1, Fla. Building Code, Building (8th ed. 2023). One of the categories of residential uses under the Building Code, Residential Group R-3, applies to buildings where the occupants are primarily permanent in nature, including: buildings that do not contain more than two dwelling units; boarding houses (non-transient) with 16 or fewer occupants; boarding houses (transient) with 10 or fewer occupants; care facilities that provide accommodations for five or fewer persons receiving care; congregate living facilities (non-transient) with 16 or fewer occupants; congregate living facilities (transient) with 10 or fewer occupants; and owner-occupied lodging houses with five

---

[2] The Florida Building Commission has divided the Florida Building Code into subparts. In this Order, the Court refers to the Florida Building Code, Building as the "Building Code". The Court refers to the Florida Building Code, Residential as the "Residential Code". Importantly, the Building Code applies to some residential buildings and contains a residential occupancy classification and use designation. § 310.1, Fla. Building Code, Building (8th ed. 2023).

or fewer guest rooms and 10 or fewer occupants. Id. at § 310.5. "Care facilities for five or fewer persons receiving care that are within a single-family dwelling are permitted to comply with the [Residential Code] provided an automatic sprinkler system is installed in accordance with Section 903.3.1.3 or Section P2904 of the" Residential Code. Id. at § 310.5.1.

At the time the Parties' dispute arose, before suit was filed, the Seventh Edition of the Building Code was in effect. Under the Seventh Edition of the Building Code, care facilities for five or fewer persons receiving care that are within a single-family dwelling were permitted to comply with the Residential Code but were required to feature an automatic sprinkler system. § 310.5.1, Fla. Building Code, Building (7th ed. 2020). By contrast, under the Seventh Edition, owner-occupied lodging houses with five or fewer guest rooms and 10 or fewer occupants were permitted to comply with the Residential Code, and the Seventh Edition did not require such lodging houses to install a sprinkler system. Id. at § 310.5.2. However, under the Eighth Edition of the Building Code, which became effective on December 21, 2023, both care facilities for five or fewer persons within single-family dwellings and owner-occupied lodging houses with five or fewer guest rooms and 10 or fewer occupants may comply with the Residential Code but must feature "an automatic sprinkler system is installed in accordance with Section 903.3.1.3 or Section P2904 of the" Residential Code. §§ 320.5.1, 310.5.2, Fla. Building Code, Building (8th ed. 2023). Unlike the Seventh Edition, the Eighth Edition of the Building Code imposes the sprinkler requirement

7

on small, owner-occupied lodging houses. The Eighth Edition of the Building Code was the effective edition of the Code when Comfy Cottage filed this suit.[3]

## II.   LEGAL STANDARD

Summary judgment is appropriate when the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356).  A moving party discharges its burden on a motion for summary judgment by showing or pointing out to the Court that there is an absence of evidence to support the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to

---

[3] The Eighth Edition of the Florida Building Code became effective the day after Comfy Cottage met with Pasco County Building Construction Services, Pasco County Fire and Rescue, and General Counsel for Pasco County to discuss waiving the sprinkler system requirement. (Dkt. 37 at ¶ 21; Dkt. 21-1 at ¶ 12)

interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320–1321 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III.    DISCUSSION

In Comfy Cottage's Motion for Summary Judgment, Comfy Cottage raises two arguments. First, Comfy Cottage asserts the sprinkler system requirement facially discriminates against disabled individuals in violation of the FHA and the ADA. (Dkt. 21 at 10) Comfy Cottage notes that Defendant does not require private residences in which disabled persons live to be outfitted with a sprinkler system. (Id. at 13) Comfy Cottage also cites to § 419.001(2), Florida Statutes, in support of its position. (Id. at 10) Section 419.001(2) characterizes homes that meet the definition of a community residential home but have six or fewer residents as "single-family units." (Id.) This status permits a noncommercial, residential use of such homes for the purposes of local laws and ordinances. (Id.) Comfy Cottage argues that the sprinkler system requirement violates § 419.001(2) because it imposes a non-residential requirement on a residential

dwelling. (Id.) Comfy Cottage contends that the sprinkler system requirement's apparent violation of § 419.001(2) is evidence that the requirement is facially discriminatory. (Id.) Second, Comfy Cottage argues Defendant failed to reasonably accommodate disabled individuals when Defendant refused to waive the sprinkler system requirement. (Id. at 11) Comfy Cottage asserts Defendant's conduct deprives disabled individuals of an equal opportunity to use and enjoy a dwelling. (Id. at 12)

In Defendant's Motion for Summary Judgment, Defendant concedes that the Home is residential and noncommercial under § 419.001(2). (Dkt. 31 at 12) However, Defendant argues this categorization relates to a structure's zoning, not its use. (Id.) Defendant maintains that when a single-family residence is used as a care facility, it must comply with the requirements of the Building Code, and the Building Code requires care facilities like the Home to install automatic sprinkler systems. (Id. at 14) Defendant contends the requirement is imposed by Florida law; for this reason, Defendant argues, Comfy Cottage fails to show the requirement facially discriminates against disabled individuals. (Id. at 15) Next, Defendant argues Comfy Cottage's disparate treatment claim fails because Comfy Cottage provides no evidence that Defendant treats disabled individuals differently than non-disabled individuals. (Id. at 15–18) Likewise, Defendant argues Comfy Cottage provides no evidence that Defendant has failed to enforce the sprinkler system requirement against similarly situated, non-disabled individuals residing in Residential Group R-3 residences. (Id.) Defendant also argues Comfy Cottage fails to show the requirement has a disparate impact because Comfy Cottage provides no relevant comparison or statistical data to

establish a *prima facie* case of disparate impact. (Id. at 18–20) Finally, Defendant argues Comfy Cottage's requested accommodation is not reasonable or necessary to afford equal opportunity to disabled individuals to use and enjoy a dwelling. (Id. at 20–26)

The Parties agree that the Court may analyze Comfy Cottage's claims under the ADA and the FHA together because the statutes' protections for disabled individuals in the context of housing are very similar. See Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, 46 F.4th 1268, 1275 (11th Cir. 2022); Caron Found. of Fla., Inc. v. City of Delray Beach, 879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) (citing Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 n.4 (2d Cir. 2003); Oconomowoc Residential Programs v. City of Milwaukee, 300 F.3d 775, 782–83 (7th Cir. 2002)). Defendant does not dispute that the ADA and the FHA apply to local or municipal zoning and use ordinances. (Dkt. 31 at 11) See id. at 781 ("Congress explicitly intended for the [FHA] to apply to zoning ordinances and other laws that would restrict the placement of group homes."); Sailboat Bend, 46 F.4th at 1275–78 (applying the FHA and the ADA to a city's zoning ordinance).

"[T]he FHA prohibits, among other things, discrimination 'against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap.'" Id. at 1275 (quoting 42 U.S.C. § 3604(f)(2)). The FHA also makes it unlawful to "make unavailable or deny a dwelling to any buyer or renter because of a handicap . . . ." Id. (quoting 42 U.S.C. § 3604(f)(1)). As for the ADA, it states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

11

or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

### a. Facial Discrimination

The sprinkler system requirement does not discriminate based on disability because it does not treat the disabled residents of the Home differently than similarly situated, non-disabled residents of buildings within the same occupancy category under the Florida Building Code. "A disabled plaintiff who has been treated in the same way as a similarly situated, non-disabled person, or . . . who has been treated better than a non-disabled comparator, cannot successfully mount a discrimination claim under" the FHA or the ADA. Sailboat Bend, 46 F.4th at 1276 (noting that with these statutes, Congress "prohibited intentional discrimination that inures to the detriment or disadvantage of the protected class"). Here, as explained below, Pasco County's sprinkler system requirement treats the disabled residents of Comfy Cottage's Home the same as similarly situated, non-disabled residents of buildings within the same occupancy category under the Building Code.

In support of its argument regarding facial discrimination, Comfy Cottage primarily argues that § 419.001, Florida Statutes, requires that community residential homes for six or fewer residents be treated as single-family units by local laws and ordinances. § 419.001(1)–(2), Fla. Stat. (2025). Comfy Cottage asserts that under this statute, the Home must be treated as a single-family unit. Comfy Cottage states, "[D]ue to the absence of any Law or Rule otherwise requiring sprinklers (including

the Florida's Building Code, Fire Code, or Administrative Code), [Defendant]'s demands for Comfy Cottage to install sprinklers or change its use in order to house disabled individuals are" facially discriminatory. (Dkt. 21 at 10) Comfy Cottage overlooks the fact that the sprinkler system requirement is imposed by the Florida Building Code.

Section 419.001 deals with zoning.[4] It provides that community residential homes for six or fewer residents "shall be allowed in single-family or multifamily zoning without approval by the local government," subject to conditions on its proximity to existing community residential homes. Id. With this statute, "[t]he legislature intended to protect such group homes from local zoning ordinances that would exclude them from the traditional single-family neighborhood." Dornbach v. Holley, 854 So. 2d 211, 212 (Fla. 2d DCA 2002); see also Miami-Dade Cnty. v. Valdes, 9 So. 3d 17, 18 n.2 (Fla. 3d DCA 2009) (citing 2 Kenneth H. Young, Anderson's Am. Law of Zoning § 9.31 et seq. (4th ed. 1996)) ("That a group home . . . is permitted by the Code in a single-family residential zone does not make it a single-family residence . . . ."). Pasco County complies with § 419.001(2) because Pasco County's Zoning Standards permit residential care facilities as "conditional uses" in all Pasco County residential districts. See Pasco Cnty., Fla., Land Dev. Code §§ 514.3, 515.3, 516.3, 517.3.

---

[4] Zoning ordinances permit certain uses in certain zones. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1221 (11th Cir. 2008) (citations omitted) ("The basic purpose of zoning is to bring complementary land uses together, while separating incompatible ones.").

The sprinkler system requirement is a feature of the Florida Building Code. It could only be found to be facially discriminatory if, on its face, the Building Code categorized structures based on whether their occupants are disabled and imposes more stringent requirements on structures with disabled occupants than on structures with similarly situated but non-disabled occupants. It does not.

The provisions of the Florida Building Code deal with, *inter alia*, the design, construction, and modification of buildings in Florida. § 553.72(1), Fla. Stat. (2025). The Florida Building Code is intended to "allow effective and reasonable protection for public safety, health, and general welfare for all the people of Florida . . . ." Id. As discussed *supra*, the Building Code governs some buildings zoned for residential uses, including care facilities that provide accommodations for five or fewer persons receiving care. § 310.5, Fla. Building Code, Building (8th ed. 2023). The Building Code also governs owner-occupied lodging houses with five or fewer guest rooms and 10 or fewer occupants ("small lodging houses").[5] Id. These structures fall within the Code's Residential Group R-3 category of occupancies. Care facilities that provide accommodations for five or fewer persons receiving care that are within a single-family dwelling ("single-family care facilities") and small lodging houses, with or without disabled residents, may comply with the less stringent provisions of the Residential Code, but they must feature an automatic sprinkler system. Id. at §§ 310.5.1, 310.5.2.

---

[5] The Code defines a "lodging house" as a "one-family dwelling where one or more occupants are primarily permanent in nature and rent is paid for guest rooms." § 202, Fla. Building Code, Building (8th ed. 2023). A "guest room" is a "room used or intended to be used by one or more guests for living or sleeping purposes." Id.

While Comfy Cottage disputes that the Home is a "care facility," (Dkt. 36 at 2–3, 8), the Court finds the Home falls squarely within that category of residential uses. The Building Code does not define "care" or "care facility," but it does instruct that where it does not define terms, they have their "ordinarily accepted meanings such as the context implies." Id. at § 201.4. Merriam Webster's Dictionary defines "care," in this context, as "responsibility for or attention to health, well-being, and safety." Care, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/care (last accessed August 25, 2025). Comfy Cottage's application for a license to operate the Home as a community residential home indicates Comfy Cottage would "be willing and able to provide" support to residents who require "substantial prompting and/or physical assistance to perform self-care/daily living activities[,]" who may be "totally dependent on staff for dressing/bathing[,]" who are incontinent of bowel or bladder and may "require scheduled toileting or use of incontinent briefs[,]" and who need "physical assistance of one person to . . . change position." (Dkt. 21-1 at 8) The Court finds that this kind of support relates to a person's health, well-being, and safety. Comfy Cottage's application noted the Home would be a "foster care facility" with a live-in caregiver. (Id. at 15) Based on the foregoing and in the absence of any contrary evidence on the record, the Court concludes that the Home is a care facility under the Building Code.

Unlike most other Residential Group R-3 occupancies, both single-family care facilities like the Home and small lodging houses are permitted to comply with the less stringent requirements of the Residential Code as long as "an automatic sprinkler

system is installed in accordance with" the Residential Code. §§ 310.5.1, 310.5.2, Fla. Building Code, Building (8th ed. 2023). Other Residential Group R-3 occupancies, such as non-transient boarding houses with 16 or fewer occupants,[6] must comply with the more stringent requirements of the Building Code. Id. at § 310.5.

Comfy Cottage argues that the sprinkler system requirement is facially discriminatory because it is not imposed on single-family, private residences in which "handicapped or non-handicapped individuals reside." (Dkt. 36 at 8–9) Comfy Cottage also argues that the requirement discriminates against disabled individuals because it imposes a burdensome requirement on three disabled individuals living together in a single-family home, but not on three non-disabled individuals living together in a single-family home. (Id. at 15)

Comfy Cottage describes the non-disabled comparator for a disabled resident of the Home too generally. According to Comfy Cottage, its residents' comparators include disabled individuals who live in private residences and non-disabled individuals living together in a single-family home. Comfy Cottage's choice of comparators ignores key characteristics of Comfy Cottage's relationship to the Home's residents. The disabled residents of the Home rely on Comfy Cottage, a private entity to which they have no familial relation, to maintain, clean, repair, and secure the Home. (See Dkt. 21-1 at ¶¶ 8–9) The Home's disabled residents pay Comfy Cottage for the privilege to live at the Home. (Id.) A representative of Comfy Cottage lives at

---

[6] The Code defines a "boarding house" as a "building arranged or used for lodging for compensation, with or without meals, and not occupied as a single-family unit." Id. at § 202.

the Home with the disabled residents. (Id. at 15) Thus, the relationship between Comfy Cottage and the disabled residents of the Home is more akin to a landlord-tenant relationship where an employee of the landlord lives in the single-family dwelling with the tenants.

Accordingly, a fair non-disabled comparator for one of the Home's disabled residents is a person who pays rent to a landlord—an entity or an individual who is not a member of the comparator's family—to live in a single-family dwelling on a permanent basis. To qualify as a proper comparator, a non-disabled comparator must be shown to rely on a non-relative landlord to maintain the dwelling, including its safety and security. A representative or employee of the landlord must also live in the comparator's home with the comparator and the other tenants. Thus, an appropriate non-disabled comparator for a resident of the Home would be a person who lives in an owner-occupied lodging house with up to three other occupants. Under the Eighth Edition of the Building Code, which became effective before Comfy Cottage initiated this action, such a lodging house must comply with the same requirements as the Home. Both single-family care facilities and small lodging houses may comply with the less stringent requirements of the Residential Code, but they must install a sprinkler system as required by the Building Code.

Based on the foregoing, the Court finds that Comfy Cottage's residents are treated the same as properly established similarly situated, non-disabled individuals. For this reason, Defendant's requirement that Comfy Cottage install a sprinkler system does not discriminate against disabled individuals on its face.

17

### b. Disparate Treatment

Comfy Cottage's claim of disparate treatment does not survive summary judgment because Defendant's requirement does not treat disabled individuals less favorably than similarly situated, non-disabled individuals. "The texts of the FHA and the ADA each require a plaintiff alleging disparate treatment to prove that he was treated less favorably than a similarly situated, non-disabled person." Sailboat Bend, 46 F.4th at 1275. Here, the challenged requirement treats the disabled residents of the Home the same as similarly situated, non-disabled individuals. Thus, Plaintiff's claims of disparate treatment under the FHA and the ADA fail.

### c. Disparate Impact

Plaintiff fails to provide evidence that establishes a *prima facie* case of disparate impact under the FHA or the ADA. "[A] plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect' and are otherwise unjustified by a legitimate rationale." Schaw v. Habitat for Humanity of Citrus Cnty., Inc., 938 F.3d 1259, 1274 (11th Cir. 2019) (quoting Tex. Dep't Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc., 576 U.S. 519, 524 (2015)). Evidence that shows a "'significant discriminatory effect'" is enough to establish a *prima facie* violation of the FHA. Id. (quoting Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1543 (11th Cir. 1994)). "Typically, a disparate impact is demonstrated by statistics." Hallmark Devs., Inc. v. Fulton Cnty., 466 F.3d 1276, 1286 (11th Cir. 2006) (citations omitted); Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218 (11th Cir. 2008) (affirming the district court's rejection of the plaintiff's disparate impact claim where the plaintiff "presented

18

no comparative data at all, relying instead on the bald assumption that because the halfway houses at issue . . . cannot be used for short-term group living, the occupancy-turnover rule must necessarily create a disparate impact on the handicapped").

Here, Comfy Cottage presents no evidence, statistical or otherwise, that disabled or handicapped individuals are disparately impacted by the sprinkler system requirement. Accordingly, Comfy Cottage fails to establish a *prima facie* case of disparate impact under the FHA or the ADA. Defendant is entitled to summary judgment on Comfy Cottage's disparate impact claims.

### d. Failure to Accommodate

Comfy Cottage provides no evidence that the requested waiver of the sprinkler system requirement was necessary to afford disabled residents an equal opportunity to use and enjoy a dwelling.[7] To succeed on a failure-to-accommodate claim, a plaintiff must show

> (1) that he is disabled, (2) that he requested a reasonable accommodation, (3) that the requested accommodation was necessary to afford him an equal opportunity to use and enjoy a dwelling, and (4) that the defendant refused to make the requested accommodation.

Schaw, 938 F.3d at 1264. Defendant does not dispute that the record establishes the first and last elements of Comfy Cottage's failure-to-accommodate claim. (Dkt. 31 at

---

[7] Defendant does not dispute that Comfy Cottage qualifies as "a person associated with a disabled individual or an aggrieved party." (Dkt. 31 at 21) (citing 42 U.S.C. 3602(i) and 3604(f)(3)(B)) Thus, Defendant does not dispute that Comfy Cottage may raise a claim of failure to accommodate under the FHA and the ADA. The Court, therefore, considers Comfy Cottage's claim as it is alleged. See Sailboat Bend, 46 F.4th at 1279–81 (considering a failure-to-accommodate claim raised by a for-profit sober living home without discussing whether the home had standing under the FHA or the ADA).

21) Defendant argues, however, that Comfy Cottage's requested accommodation was neither reasonable nor necessary. (Id.)

Comfy Cottage fails to establish the necessity element of its failure-to-accommodate claim. To be necessary under Eleventh Circuit precedent, the requested "accommodation must (1) actually alleviate the effects of the plaintiff's disability and (2) address the needs created by the plaintiff's disability." Sailboat Bend, 46 F.4th at 1280 (citing Schwarz, 544 F.3d at 1226). Comfy Cottage makes no argument and provides no evidence as to the necessity of the requested accommodation. Indeed, other than an unsupported assertion that the required sprinkler system is "cost-prohibitive," (Dkt. 1 at ¶ 17), Comfy Cottage says nothing in the papers about why Comfy Cottage cannot afford to install the sprinkler system. Likewise, Comfy Cottage produces no evidence that any individual disabled resident will be unable to afford to live at the Comfy Cottage if it installs a sprinkler system. While Comfy Cottage notes that its residents "receive either Social Security Disability income . . . or Supplemental Security Income" and that this income "will be used to pay for their food, shelter costs, and other personal items and expenses," (Dkt. 21-1 at ¶ 9), Comfy Cottage does not show that the residents' income would not permit them to afford a rent that could cover the cost of installing and maintaining a sprinkler system.

Comfy Cottage fails to establish an essential element of its failure-to-accommodate claims, so Defendant is entitled to summary judgment on those claims. See id. at 1281 (declining to address the reasonableness prong of the plaintiffs' failure-to-accommodate claim where the plaintiffs failed to establish the necessity prong).

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED**:

1. Plaintiff's Motion for Summary Judgment, (Dkt. 21), is **DENIED**.

2. Defendant's Motion for Summary Judgment, (Dkt. 31), is **GRANTED**.

3. The Clerk is directed to enter judgment for Defendant and to **CLOSE THIS CASE**.

**DONE** and **ORDERED** in Tampa, Florida, this 25th day of August 2025.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person